IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WE UTERQUE HOLDING CORP., | § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. _____ |
| PAUL EZEKIEL TURNER AND MAINSTREET PROPERTY GROUP, LLC, | § § § § | |
| Defendants. | § | |

## PLAINTIFF WE UTERQUE HOLDING CORP.'S ORIGINAL COMPLAINT

Plaintiff We Uterque Holding Corp. ("Plaintiff") files this its Original Complaint against Defendants Paul Ezekiel Turner ("Turner") and Mainstreet Property Group, LLC ("MPG"), and for this Complaint, Plaintiff would show the Court as follows:

### PARTIES

1. Plaintiff is a Delaware corporation with its principal place of business in Arizona, and therefore, Plaintiff is a citizen of Delaware and Texas.

2. Turner is an individual resident of the State of Indiana and a citizen of the State of Indiana who can be served with process at his usual business address of 109 W. Jackson Street, Cicero, Indiana 46034. Turner is doing business in Texas by, among other things, entering into contracts, including the guaranties signed by Turner which are the subject of this case which are performable in whole or in part in Texas.

3. MPG is a Indiana limited partnership whose members are all citizens of Indiana or Wisconsin. MPG is doing business in Texas by, among other things, entering into contracts, including the guaranties signed by MPG which are the subject of this case which are performable in whole or in part in Texas, and MPG can be served with process through its registered agent,

COGENCY GLOBAL, Inc., at its usual business address located at 1601 Elm Street, Suite 4360, Dallas, Texas 75201. MPG's members are individuals who are residents and citizens of the State of Indiana, an Indiana corporation which maintains its principal place of business in Indiana, a Wisconsin corporation which maintains its principal place of business in Wisconsin, and Indiana limited liability companies whose members are in turn all citizens of the State of Indiana, and therefore, MPG is a citizen of Indiana and Wisconsin.

## JURISDICTION

4.      This case involves citizens of different states and an amount in controversy which exceeds $75,000.00, exclusive of interest and costs, and therefore, pursuant to 28 U.S.C. §1332(a), this Court has jurisdiction.

## VENUE

5.      Pursuant to 28 U.S.C. §1391, venue is proper in the Northern District of Texas, Fort Worth Division, because a substantial part the events or omissions giving rise to the claims occurred in the Northern District of Texas, Fort Worth Division. Further, in each of the guaranties executed by Turner and MPG, Turner and MPG acknowledged that the loan which was the subject of the guaranty was originated by the original lender, JPMorgan Chase Bank, N.A. ("Chase"), out of its offices located in Fort Worth, Texas, and Turner and MPG agreed to a jurisdiction and venue in any state or federal court located in Texas and waived any claim that any such forum "is not a convenient forum or the proper venue for any such suit, action or proceeding."

## FACTUAL BACKGROUND

### MS Amarillo, LLC

6.      On or about September 8, 2017, Chase, as Bank, and MS Amarillo, LLC, as Borrower, executed and entered into a Loan Agreement dated September 8, 2017 (the "Amarillo

Loan Agreement") pursuant to which Chase agreed to provide to MS Amarillo, LLC a construction loan in an amount not to exceed $12,922,301.00 (the "Amarillo Loan"), the proceeds of which were to be used by MS Amarillo, LLC to construct a 70-bed skilled nursing facility on property owned by MS Amarillo, LLC and located in Amarillo, Potter County, Texas (the "Amarillo Property").

7. The Amarillo Loan is evidenced by a Construction Note dated September 8, 2017 executed by MS Amarillo, LLC and payable to the order of Chase in the original principal amount of $12,922,301.00 or so much thereof as may be advanced and outstanding, plus interest as provided therein (the "Amarillo Note"). The Amarillo Note and the Amarillo Loan are secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Financing Statement dated September 8, 2017, executed by MS Amarillo, LLC, as Trustor, for the benefit of Chase and its assignees and pursuant to which MS Amarillo, LLC granted a first lien against the Amarillo Property and all improvements thereon as security for the Amarillo Loan (the "Amarillo Deed of Trust").

8. All of the indebtedness and obligations of MS Amarillo, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Amarillo, LLC to Chase under the Amarillo Note, the Amarillo Loan Agreement, the Amarillo Deed of Trust and other documents pertaining to the Amarillo Loan (collectively, the "Amarillo Loan Documents") are absolutely and unconditionally guaranteed by Turner pursuant to the terms of a Continuing Guaranty dated September 8, 2017 (the "Turner Amarillo Guaranty"). A true and correct copy of the Turner Amarillo Guaranty is attached hereto as Exhibit "1" and is incorporated herein by all reference for all purposes. Pursuant to the terms of the Turner Amarillo Guaranty, Chase agreed to refrain from enforcing Turner's obligations under the Turner Amarillo Guaranty until "the earlier of (i)

twenty-six (26) months from the date of the [Amarillo] Loan Agreement or (ii) eight (8) months from the issuance of a certificate of occupancy of the 'Skilled Nursing Facility' (as defined in the Loan Agreement) by the proper Governmental Authority. . . ."

9. All of the indebtedness and obligations of MS Amarillo, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Amarillo, LLC to Chase under the Amarillo Note and other Amarillo Loan Documents are absolutely and unconditionally guaranteed by MPG pursuant to the terms of a Continuing Guaranty dated September 8, 2017 (the "MPG Amarillo Guaranty"). A true and correct copy of the MPG Amarillo Guaranty is attached hereto as Exhibit "2" and is incorporated herein by all reference for all purposes.

10. Events of default occurred under the Amarillo Loan Documents, including defaults under the Amarillo Loan Agreement as a result of the failure of MS Amarillo, LLC and MPG to provide financial statements in accordance with the terms of the Amarillo Loan Agreement. MS Amarillo, LLC, MPG and Turner, among others, were provided with notice of such defaults and an opportunity to cure. As a result of the failure of MS Amarillo, LLC to cure the specified defaults, Chase accelerated the outstanding principal balance of the Amarillo Note, and by letter dated January 28, 2019, Chase provided MS Amarillo, LLC, Turner and MPG with notice of the acceleration of the Amarillo Note, and therein, Chase made demand for immediate payment of all outstanding principal and all accrued but unpaid interest and other amounts due and owing under the Amarillo Note and other Amarillo Loan Documents.

11. Despite such notice and demand, MS Amarillo, LLC, Turner and MPG failed to pay the amounts due and owing under the Amarillo Note and other Amarillo Loan Documents.

12. The Amarillo Loan, the Amarillo Note, the Amarillo Deed of Trust and other Amarillo Loan Documents were assigned by Chase to Plaintiff together with all of Chase's

rights, title and interests in the Amarillo Loan and Amarillo Loan Documents, and the Amarillo Note was endorsed and delivered to Plaintiff.

13.  Based on the failure of MS Amarillo, LLC to pay the Amarillo Note, the Amarillo Property was posted for foreclosure and sold at an April 2, 2019 foreclosure sale.

14.  After allowing all just and lawful offsets, payments and credits including, but not limited to, the proceeds from the April 2, 2019 foreclosure sale, there remains due and owing under the Amarillo Note the outstanding principal balance of $3,449,475.45, plus accrued but unpaid interest as of January 31, 2020 in the amount of $471,426.73, plus property protection advances in the amount of $9,660.56, and third party and professional fees, excluding legal fees incurred in this proceeding, totaling $145,427.80, with interest continuing to accrue on the outstanding principal balance from and after January 31, 2020 at the current per diem rate of $837.38.

### MS Beaumont, LLC

15.  On or about August 18, 2017, Chase, as Bank, and MS Beaumont, LLC, as Borrower, executed and entered into a Loan Agreement dated August 18, 2017 (the "Beaumont Loan Agreement") pursuant to which Chase agreed to provide to MS Beaumont, LLC a construction loan in an amount not to exceed $13,479,290.00 (the "Beaumont Loan"), the proceeds of which were to be used by MS Beaumont, LLC to construct a 70-bed skilled nursing facility on property owned by MS Beaumont, LLC and located in Beaumont, Jefferson County, Texas (the "Beaumont Property").

16.  The Beaumont Loan is evidenced by a Construction Note dated August 18, 2017, executed by MS Beaumont, LLC and payable to the order of Chase in the original principal amount of $13,479,290.00 or so much thereof as may be advanced and outstanding, plus interest as provided therein (the "Beaumont Note"). The Beaumont Note and the Beaumont Loan are

secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Financing Statement executed by MS Beaumont, LLC, as Trustor, for the benefit of Chase and its assignees and pursuant to which MS Beaumont, LLC granted a first lien against the Beaumont Property and all improvements thereon as security for the Beaumont Loan (the "Beaumont Deed of Trust").

17.   All of the indebtedness and obligations of MS Beaumont, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Beaumont, LLC to Chase under the Beaumont Note, the Beaumont Loan Agreement, the Beaumont Deed of Trust and other documents pertaining to the Beaumont Loan (collectively, the "Beaumont Loan Documents") are absolutely and unconditionally guaranteed by Turner pursuant to the terms of a Continuing Guaranty dated August 18, 2017 (the "Turner Beaumont Guaranty"). A true and correct copy of the Turner Beaumont Guaranty is attached hereto as Exhibit "3" and is incorporated herein by all reference for all purposes. Pursuant to the terms of the Turner Beaumont Guaranty, Chase agreed to refrain from enforcing Turner's obligations under the Turner Beaumont Guaranty until "the earlier of (i) twenty-six (26) months from the date of the [Beaumont] Loan Agreement or (ii) eight (8) months from the issuance of a certificate of occupancy of the 'Skilled Nursing Facility' (as defined in the Loan Agreement) by the proper Governmental Authority. . . ."

18.   All of the indebtedness and obligations of MS Beaumont, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Beaumont, LLC to Chase under the Beaumont Note and other Beaumont Loan Documents are absolutely and unconditionally guaranteed by MPG pursuant to the terms of a Continuing Guaranty dated August 18, 2017 (the "MPG Beaumont Guaranty"). A true and correct copy of the MPG

Beaumont Guaranty is attached hereto as Exhibit "4" and is incorporated herein by all reference for all purposes.

19. Events of default occurred under the Beaumont Loan Documents, including defaults under the Beaumont Loan Agreement as a result of the failure of MS Beaumont, LLC and MPG to provide financial statements in accordance with the terms of the Beaumont Loan Agreement. MS Beaumont, LLC, MPG and Turner, among others, were provided with notice of such defaults and an opportunity to cure. As a result of the failure of MS Beaumont, LLC to cure the specified defaults, Chase accelerated the outstanding principal balance of the Beaumont Note, and by letter dated February 4, 2019, Chase provided MS Beaumont, LLC, Turner and MPG with notice of the acceleration of the Beaumont Note, and therein, Chase made demand for immediate payment of all outstanding principal and all accrued but unpaid interest and other amounts due and owing under the Beaumont Note and other Beaumont Loan Documents.

20. Despite such demands, MS Beaumont, LLC, Turner and MPG failed to pay the amounts due and owing under the Beaumont Note and other Beaumont Loan Documents.

21. The Beaumont Loan, the Beaumont Note, the Turner Beaumont Guaranty, the MPG Beaumont Guaranty, the Beaumont Deed of Trust and other Beaumont Loan Documents were assigned by Chase to Plaintiff together with all of Chase's rights, title and interests in the Beaumont Loan and Beaumont Loan Documents, and the Beaumont Note was endorsed and delivered to Plaintiff.

22. Based on the failure of MS Beaumont, LLC to pay the Beaumont Note, the Beaumont Property was posted for foreclosure and sold at an April 2, 2019 foreclosure sale.

23. After allowing all just and lawful offsets and credits including, but not limited to, the proceeds from the April 2, 2019 foreclosure sale, there remains due and owing under the

Beaumont Note the outstanding principal balance of $4,024,096.69, plus accrued but unpaid interest as of January 31, 2020 in the amount of $430,752.35, plus property protection advances in the amount of $32,231.13, and third party and professional fees, excluding legal fees incurred in this proceeding, totaling $73,153.17, with interest continuing to accrue on the outstanding principal balance at the current per diem rate of $976.88.

## MS Temple, LLC

24. On or about August 18, 2017, Chase, as Bank, and MS Temple, LLC, as Borrower, executed and entered into a Loan Agreement dated August 18, 2017 (the "Temple Loan Agreement") pursuant to which Chase agreed to provide to MS Temple, LLC a construction loan in an amount not to exceed $10,580,800.00 (the "Temple Loan"), the proceeds of which were to be used by MS Temple, LLC to construct a 70-bed skilled nursing facility on property owned by MS Temple, LLC and located in Temple, Bell County, Texas (the "Temple Property").

25. The Temple Loan is evidenced by a Construction Note dated August 18, 2017, executed by MS Temple, LLC and payable to the order of Chase in the original principal amount of $10,580,800.00 or so much thereof as may be advanced outstanding, plus interest as provided therein (the "Temple Note"). The Temple Note and the Temple Loan are secured by, among other things, a Deed of Trust, Assignment of Leases and Rents, Security Agreement, and Financing Statement executed by MS Temple, LLC as Trustor, for the benefit of Chase and its assignees and pursuant to which MS Temple, LLC, granted a first lien against the Temple Property and all improvements thereon as security for the Temple Loan (the "Temple Deed of Trust").

26. All of the indebtedness and obligations of MS Temple, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Temple, LLC to Chase under the

Temple Note, the Temple Loan Agreement, the Temple Deed of Trust and other documents pertaining to the Temple Loan (collectively, the "Temple Loan Documents") are absolutely and unconditionally guaranteed by Turner pursuant to the terms of a Continuing Guaranty dated August 18, 2017 (the "Turner Temple Guaranty"). A true and correct copy of the Turner Temple Guaranty is attached hereto as Exhibit "5" and is incorporated herein by all reference for all purposes. Pursuant to the terms of the Turner Temple Guaranty, Chase agreed to refrain from enforcing Turner's obligations under the Turner Temple Guaranty until "the earlier of (i) twenty-six (26) months from the date of the [Temple] Loan Agreement or (ii) eight (8) months from the issuance of a certificate of occupancy of the 'Skilled Nursing Facility' (as defined in the Loan Agreement) by the proper Governmental Authority. . .."

27. All of the indebtedness and obligations of MS Temple, LLC to Chase including, but not limited to, all of indebtedness and obligations of MS Temple, LLC to Chase under the Temple Note and other Temple Loan documents, are absolutely and unconditionally guaranteed by MPG pursuant to the terms of a Continuing Guaranty dated August 18, 2017 (the "MPG Temple Guaranty"). A true and correct copy of the MPG Temple Guaranty is attached hereto as Exhibit "6" and is incorporated herein by all reference for all purposes.

28. Events of default occurred under the Temple Loan, including defaults under the Temple Loan Agreement as a result of the failure of MS Temple, LLC and MPG to provide financial statements in accordance with the terms of the Temple Loan Agreement. MS Temple, LLC, MPG and Turner, among others, were provided with notice of such defaults and an opportunity to cure. As a result of the failure of MS Temple, LLC to cure the specified defaults, Chase accelerated the outstanding principal balance of the Temple Note, and by letter dated February 11, 2019, Chase provided MS Temple, LLC, Turner and MPG with notice of the

acceleration of the Temple Note, and therein, Chase made demand for immediate payment of all outstanding principal and all accrued but unpaid interest and other amounts due and owing under the Temple Note and other Temple Loan Documents.

29. Despite such demand, MS Temple, LLC, Turner and MPG failed to pay the amounts due and owing under the Temple Note and other Temple Loan Documents.

30. The Temple Loan, the Temple Note, the Turner Temple Guaranty, the MPG Temple Guaranty, the Temple Deed of Trust and other Temple Loan Documents were assigned by Chase to Plaintiff together with all Chase's rights, title and interests in the Temple Loan and Temple Loan Documents, and the Temple Note was endorsed and delivered to Plaintiff.

31. Based on the failure of MS Temple, LLC to pay the Temple Note, the Temple Property was posted for foreclosure and sold at an April 2, 2019 foreclosure sale.

32. After allowing all just and lawful offsets and credits including, but not limited to the proceeds from the April 2, 2019 foreclosure sale, there remains due and owing under the Temple Note the outstanding principal balance of $1,303,855.44, plus accrued but unpaid interest as of January 31, 2020 in the amount of $169,740.16, plus property protection advances in the amount of $5,028.59, and third party and professional fees, excluding legal fees incurred in this proceeding, totaling $44,201.42, with interest continuing to accrue on the outstanding principal balance from and after January 31, 2020, at the per diem rate of $207.87.

## CAUSE OF ACTION

### Breach of Guaranties

33. Plaintiff is the owner and holder of the Amarillo Note and the owner of both the Turner Amarillo Guaranty and the MPG Amarillo Guaranty (collectively, the "Amarillo Guaranties). Pursuant to the respective terms of the Amarillo Guaranties, Turner and MPG (collectively, the "Defendants") are jointly and severally liable for all of the indebtedness and

obligations of MS Amarillo, LLC to Plaintiff inclusive of all of the unpaid amounts remaining due and owing under the Amarillo Note as set forth above.

34.   Plaintiff seeks a judgment from and against Turner and MPG for all of the amounts due and owing under the Amarillo Note and other Amarillo Loan Documents, plus pre-judgment interest and post-judgment interest thereon as allowed by law.

35.   Plaintiff is the owner and holder of the Beaumont Note and the owner of both the Turner Beaumont Guaranty and the MPG Beaumont Guaranty (collectively, the "Beaumont Guaranties").  Pursuant to the respective terms of the Beaumont Guaranties, Defendants are jointly and severally liable for all the indebtedness and obligations of MS Beaumont, LLC to Plaintiff inclusive of all of the unpaid amounts remaining due and owing under the Beaumont Note as set forth above.

36.   Plaintiff seeks a judgment from and against Turner and MPG for all of the amounts due and owing under the Beaumont Note and other Beaumont Loan Documents, plus pre-judgment interest and post-judgment interest thereon as allowed by law.

37.   Plaintiff is the owner and holder of the Temple Note and the owner of both the Turner Temple Guaranty and the MPG Temple Guaranty (collectively, the "Temple Guaranties"). Pursuant to the respective terms of the Temple Guaranties, Defendants are jointly and severally liable for all the indebtedness and obligations of MS Temple, LLC to Plaintiff inclusive of all of the unpaid amounts remaining due and owing under the Temple Note as set forth above.

38.   Plaintiff seeks a judgment from and against Turner and MPG for all of the amounts due and owing under the Temple Note and other Temple Loan Documents, plus pre-judgment interest and post-judgment interest thereon as allowed by law.

## Attorneys' Fees

39. Pursuant to the respective terms of the Amarillo Guaranties, the Beaumont Guaranties and Temple Guaranties, Turner and MPG expressly agreed that each "is liable for any deficiency in payment of any Liabilities whether of principal, interest, fees, costs or expenses remaining after the disposition of any Collateral," and each "is liable . . . for all reasonable costs and expenses of any kind incurred in the making and collection of this Guaranty, including, without limitation, reasonable attorneys' fees and court costs." Based thereon, Plaintiff seeks a judgment from and against Turner and MPG for all attorneys' fees and collection costs incurred by Plaintiff in enforcing the Amarillo Guaranties and collecting the amounts remaining due and owing under the Amarillo Note and Amarillo Loan, a judgment against Turner and MPG for all attorneys' fees and collection costs incurred by Plaintiff in enforcing the Beaumont Guaranties and collecting the amounts due and owing under the Beaumont Note and Beaumont Loan and a judgment from and against Turner and MPG for all the attorney's fees and collection costs incurred by Chase in enforcing the Temple Guaranties and collecting the amounts remaining due and owing under the Temple Note and the Temple Loan.

40. Alternatively, pursuant to Texas Civil Practice & Remedies Code §38.001 et. seq., Plaintiff seeks a judgment from and against Turner for all attorneys' fees incurred by Plaintiff in collecting the amounts due and owing under each of the loans at issue in an amount to be established at trial.

## Conditions Precedent

41. All conditions precedent to the relief requested by Plaintiff herein have occurred or have been performed.

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Turner and MPG be cited to appear and answer herein and that following a hearing, Plaintiff be awarded a judgment

from and against Turner and MPG, jointly and severally, for all of the amounts due and owing under the Amarillo Note, the Beaumont Note, the Temple Loan, for pre-judgment interest and post-judgment interest as allowed by law, for all collection costs and attorneys' fees incurred by Plaintiff and for such other and further relief, both at law and in equity, as to which Plaintiff may show itself to be justly entitled.

Respectfully submitted,

WINSTEAD PC

By: /s/ Brian T. Morris
Brian T. Morris
State Bar No. 14469600
bmorris@winstead.com

Bradley A. Monk
State Bar No. 24077502
bmonk@winstead.com

500 Winstead Building
2728 N. Harwood Street
Dallas, Texas 75201
(214) 745-5400 / (214) 745-5390 – FAX

**ATTORNEYS FOR PLAINTIFF WE UTERQUE HOLDING CORP.**